Jaime BLUM, Brij Kapur and James C. Spitsberger, Plaintiffs,

v.

WITCO CHEMICAL CORPORATION, Defendant.

Civ. A. No. 83–3047.

United States District Court, D. New Jersey.

Dec. 27, 1988.

---

John M. Esposito, Sobel & Lyon, P.C., East Hanover, N.J., for plaintiffs.

Samuel B. Bornstein, P.C., Paramus, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

### INTRODUCTION

The Supreme Court has sent a Christmas gift to this court delivered via the Third Circuit Court of Appeals. It is called "How to Make an Attorney Fee Multiplier." However, the instructions are so confusing and inconsistent that this court has been unable to put the "gift" together. Before dealing with the specific instructions received, it is necessary to consider what it is that we are to construct. In doing so we must reconsider the purpose of contingency fee agreements and how they relate to statutory fee awards, particularly in civil rights cases.

The typical contingency fee agreement permits the client and his or her counsel to provide that in the event of a recovery, the fee will be a percentage of that recovery. In the event of no recovery there will be no fee. By this arrangement the attorney accepts two major risks: (1) the client may not prevail and counsel will receive nothing, and (2) the percentage applied to the recovery may not be sufficient to compensate for the time expended, even if the client prevails. As a result, the contingency agreement usually anticipates a higher fee than would be charged if billing were done solely on an hourly basis. The logic is simple. If the attorney may not be compensated at all or adequately, a premium should be paid if the matter is concluded as both client and counsel hope. It is recognized that such arrangements permit those who cannot afford to hire lawyers on an hourly basis to have access to our judicial system. It opens the courthouse door to the poor.

Having recited the obvious, it next becomes necessary to view such arrangements in the context of statutory fee awards. The same policy which permits and encourages private contingency contracts underlies congressionally authorized fee awards to the prevailing party in certain types of litigation. It provides the means to the underprivileged and encourages the enforcement of certain rights in instances in which it would not otherwise be feasible or affordable to do so. *See*

Senate Report 94–1011, Civil Rights Attorney's Fees Award Act of 1976, 1976 U.S. Code Cong. & Admin. News 5908, 5910.

Statutory fee cases are distinguishable from contingency agreements, however, in that statutory fee cases carry one principal risk to counsel, not two. They likewise, in most instances, will not provide for any payment if the client does not prevail, but they do provide to a prevailing party full payment of the time counsel reasonably devoted to the matter, rather than being dependent on the size of the recovery. If otherwise justified, the fee award may even exceed the total recovery, but full compensation for the time reasonably devoted is guaranteed.

The question presented is when and whether counsel is entitled to have her hourly compensation increased because she has assumed the risk of receiving no fee at all. Since the purpose of these statutes is to encourage the vindication of certain enumerated rights and provide competent counsel to accept and pursue these matters, the ultimate question is whether further fee enhancement is necessary to obtain the services of such counsel. The court fears, however, that both the Supreme Court and the Third Circuit Court of Appeals have designed an erector set from which no attorney will ever be able to build a valid claim for a contingency enhancement or multiplier.

Initially, the Supreme Court has held that determination of this issue requires a marketwide analysis of the legal community and is not to be resolved by consideration of the specific risk encountered in the particular litigation under consideration. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585 (1987) (O'Connor, J., concurring) [hereinafter *"Delaware Valley II"*]. This court respectfully submits that evidence of the practices and expectations in non-statutory fee cases is not relevant.

In private litigation the client is usually given the choice between paying an hourly rate—win or lose—or paying a percentage

only if there is a successful result. Of course, that inquiry will demonstrate that attorneys will not *insist* upon a contingency in order to undertake such matters, since they will be paid their fee on an hourly basis irrespective of the outcome. If the client is unable or unwilling to enter into such an arrangement, then a contingency is the only alternative. Such contingency is invariably geared to the amount of the recovery and not the time devoted by counsel.

The unique question raised in statutory fee cases is whether competent counsel can be obtained with the understanding that if they lose they will receive nothing, but if they prevail they will be compensated *solely* upon the basis of the time devoted. Therefore, that inquiry can only be directed towards those who regularly handle such matters. In those circumstances, evidence of the practices and expectations of such specialists *is* relevant.

Nonetheless, it is doubtful that analysis of the risk of a specific case can be avoided. If the relevant market requires some form of enhancement, is the quantification likewise to be done on a marketwide basis or should it depend on the risks presented in the case before the court? Furthermore, even if the market discloses that multipliers are not necessary to attract competent counsel in general, may not the specific case require it because of the substantial risk envisioned? The risk for which counsel should be compensated is the risk of no recovery in the particular case for which she seeks fees. Even if lawyers do not need, seek or expect such enhancement in most other cases, this conclusion would be irrelevant if no one can be found to undertake the particular matter in issue because of the substantial risk of no recovery.

Therefore, two inquiries must be made: (1) Do competent counsel require multipliers in order to represent plaintiffs in these cases or in the particular case before the court; and (2) if multipliers are a necessary inducement, how are they to be calculated and determined? [1]

1. If a case by case analysis is appropriate to

quantify the risk, the court acknowledges that

The courts have generally recognized the danger in lengthy and complex hearings on post trial fee applications. Indeed, in the opinion on remand the Third Circuit reiterates the danger of "the tail wagging the dog." *See Blum v. Witco Chemical Corp.,* 829 F.2d 367, 377 (3rd Cir.1987) [hereinafter *"Blum"*]. But in the face of this reiteration, the Third Circuit proposes a hearing which conceivably could be longer, more complex and more expensive than the trial itself. It also strikes fear into the court and counsel by suggesting that the court's findings might be binding in other similar matters upon lawyers and future parties not now before the court or otherwise represented.

Reading between the lines of both the Supreme Court and the Third Circuit's opinions in this matter, one may conclude that multipliers or other enhancers are so disfavored as to be virtually non-existent. One thing is certain, if multipliers are essential to the procurement of competent counsel to handle these matters, the proof required by virtue of these two decisions is so elusive, burdensome and expensive that the prospect of a hearing to obtain such relief is sufficient in and of itself to discourage counsel who otherwise would undertake such matters.

The result of all of this will be to discourage counsel from accepting civil rights matters and other statutory fee cases. From a purely economic point of view, the virtual elimination of multipliers places counsel at a disadvantage as compared to those who handle contingent matters in non-statutory fee cases. The bonus which might make the risk worth taking is eliminated by the standards imposed, the difficult proofs necessary to meet those standards, and the uncertainty of its award. This court respectfully recommends that enhancers should be the rule and not the exception,

and that the multiplier should be established when the risk exists and not after it has been resolved.[2] The monetary damages sought in these cases may be small but the principle involved great. It would run counter to congressional intent to discourage counsel from handling such matters by denying them compensation for the risk undertaken.

The arguments of windfall are both unfair and unrealistic. The lawyers who undertake these cases serve the system. It is not a windfall until the multiplier substantially exceeds the fees and expenses lost in prior matters. There is nothing offensive in awarding to a lawyer more than her hourly compensation if she has risked nonpayment in this case and has or will suffer it in others. The rights being vindicated are far more important than concern that from time to time a lawyer may be overcompensated.

The Supreme Court has expressed concern that the granting of multipliers, in effect, requires a losing defendant to finance other litigation to which it is not a party. *Delaware Valley II,* 107 S.Ct. at 3083 (plurality opinion). The typical contingency arrangement requires a successful plaintiff to turn over to counsel a percentage of an award intended to fully compensate such plaintiff, thereby substantially reducing the amount of such award. If a successful plaintiff can be expected to so fund the system, why should not an unsuccessful defendant (who has been found to be a violator of the law) be expected to do so as well?

This case is not untypical. Defendant is a large corporation which has required plaintiffs' counsel to fight every step of the way. Nothing has been conceded, agreed upon or volunteered. While no one questions counsel's right to mount a vigorous

---

the determination of such risk in hindsight is difficult. One of the ways that this difficulty can be avoided is by having the contingency resolved at the beginning of the case—the time when client and counsel do so in their private dealings. The proposed multiplier can be submitted to the court for review, the defendant can be heard, and the proposal approved, rejected or modified by the court.

**2.** The Third Circuit's Task Force on Court Awarded Attorney Fees has suggested that the determination of fees could take place at a pretrial conference. *See Court Awarded Attorney Fees: Report of the Third Circuit Task Force,* 108 F.R.D. 237, 263 (1985).

defense, it is important for the court to recognize the resources and ability of such defendants to resist these claims, and the perseverance and competence needed to prevail. Those efforts should be rewarded —not discouraged.

Having said all of this, the court remains duty bound to interpret and apply the decisions above to the facts of this case. Before the court is the Report and Recommendation of the Magistrate on plaintiffs' motion for an increased fee that compensates them for delay in payment and for risk of loss.

## BACKGROUND

### Procedural History.

In the underlying case, three research chemists brought an age discrimination suit against their former employer, Witco Chemical Corporation. A jury awarded plaintiffs $75,057.05 in lost pension benefits under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. Plaintiffs were also awarded $135,977.40 in attorney's fees, as provided by the ADEA. 29 U.S.C. Section 626(b). The total fees awarded included a lodestar amount as well as a 20 per cent multiplier to reflect the contingent nature of the case and the delay in payment of fees.

On appeal, the Third Circuit affirmed the lodestar amount of $113,314.50. The appellate court vacated this court's calculation of the 20 per cent multiplier and remanded for recalculation in light of the United States Supreme Court's recent decision in *Delaware Valley II.* Plaintiffs' motion for post-judgment interest and attorneys' fees was referred to the Magistrate. In a Report and Recommendation filed July 5, 1988, the magistrate recommended that plaintiffs be awarded post-judgment interest in the amount of $10,872.45 and that plaintiffs be awarded supplemental attorneys' fees of $1,887.50. Both recommendations were adopted by this court in an order filed October 26, 1988. The Magistrate also recommended that plaintiffs' motion for an upward adjustment of the lodestar be denied. Plaintiff filed an objection to this recommendation.

### Legal Standards.

In *Delaware Valley II,* the Supreme Court, in a 4–1–4 decision, upheld the availability of contingency multipliers but refused to apply one in the case before it. The Third Circuit has interpreted Justice O'Connor's concurring opinion as commanding the majority of the court. *See Blum,* 829 F.2d at 379–82. As interpreted by the Third Circuit, *Delaware Valley II* holds as follows:

(1) Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting statutes;

(2) Compensation should be based on the difference in market treatment of contingent fee cases *as a class,* rather than in a particular case; and

(3) To justify enhancement for risk, the prevailing party must show that, absent such enhancement, plaintiffs "would have faced substantial difficulties in finding counsel in the local or other relevant market." 829 F.2d at 379.

This third holding has been emphasized by the Third Circuit. In *Student Public Interest Research Group of New Jersey Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436 (3d Cir.1988) [hereinafter *"SPIRG"*], the Third Circuit stated that ensuring that a fee is sufficient to attract competent counsel is "the raison d'etre of the fee-shifting statute as explicated by *Delaware Valley II."* 842 F.2d at 1439. The court found that

the ultimate inquiry in establishing a reasonable fee must be the rate necessary to attract competent counsel, and that contingency multipliers should be awarded only when necessary to attract such counsel.

842 F.2d at 1451.

Although the Third Circuit concluded that the Supreme Court will permit contingency multipliers, the appellate court acknowledged that the appropriate methodology to determine the multiplier was left unclear. The Third Circuit did suggest several ways to develop a record to facilitate this "daunting task." 829 F.2d at 380. The *Blum* court noted, at the outset, that

plaintiffs have a "significant burden to carry to justify a contingency multiplier." *Id.* The court suggested that the analysis "will most certainly require expert testimony from someone familiar with the economics of the legal profession," *id.*, perhaps even utilizing econometric models. Noting that such information would be costly to obtain, the *Blum* court instructed this court to consider whether such studies are feasible and whether there are alternatives that will meet the *Delaware Valley II* test. 829 F.2d at 381.

The court suggested that the Supreme Court's inclusion of *all* contingency cases, even those in which a successful attorney is not compensated on a lodestar basis, might skew the calculation upward. Limiting the inquiry to a smaller subset of contingency cases, however, might not provide sufficient basis for comparison. This court has previously indicated its views as to the relevancy of practices in non-statutory fee cases. *See supra,* at 495.

The court instructed that delay and risk are distinct issues warranting separate treatment. 829 F.2d at 380, n. 12. Neither *Blum* nor *Delaware Valley II* undermine this court's finding in its first opinion that the lodestar amount constitutes insufficient compensation to plaintiff's attorney. Indeed, the *Blum* Court stated that both delay and risk are legitimate reasons for increasing the lodestar amount. 829 F.2d at 379. The court warned, however, that a determination of how the market compensates for contingency in this case will control future cases involving the same market. 829 F.2d at 381.

*Multiplier for Risk.*

 The Magistrate recommended that no multiplier be allowed on the issue of risk because plaintiffs had failed to meet the heavy burden of proof required by the Third Circuit in *Blum.* Specifically, the Magistrate found that the affidavits offered by various lawyers were conclusory and failed to document the relevant economic factors. He concluded that plaintiffs had not only failed to submit any econometric studies; they had not addressed whether such studies are feasible or whether there are alternatives that would suffice as adequate proof in light of *Delaware Valley II* and *Blum.*

Subsequent to the filing of the Magistrates's Report and Recommendation, plaintiffs consulted an expert in financial modeling, econometrics and computers. According to the consultant, the cost of developing a mathematical model to determine the relationship between the hourly rate and contingency compensation rates in cases similar to this one would be $17,600. (Supplemental Certification of John M. Esposito, paras. 3, 5). The Third Circuit does not interpret *Delaware Valley II* as requiring such studies in all cases. *See SPIRG,* at 1452, n. 18. The court finds that an econometric study would not be practicable in this case. Accordingly, the question becomes whether the affidavits submitted on behalf of plaintiff satisfy the proof required by *Delaware Valley II. See Blum,* at 381.

This court understands *Delaware Valley II* to require a two-step inquiry. First, plaintiff must offer evidence as to how the "relevant" market treats contingency. As discussed above, Justice O'Connor's opinion seems to indicate that the "relevant" market is all civil cases within a particular geographical region. Plaintiff has demonstrated, through affidavits of lawyers who practice in this district, that lawyers generally expect and receive a premium for contingency cases. The premium represents the amount in excess of a straight hourly fee. Defendants do not contest this showing.

Second, *Delaware Valley II* requires plaintiff to demonstrate the difficulty in obtaining legal representation in the "relevant" market. The "relevant" market cannot be deemed to include all civil practitioners, for a healthy abundance of personal injury lawyers willing to take cases on a contingency is not meaningful to a person who has been wrongfully discharged from employment. Therefore, this court must assess whether plaintiff has shown that a contingency multiplier is necessary to ensure adequate legal representation for those seeking to vindicate rights under

laws that forbid discrimination in employment.

The Third Circuit has interpreted *Delaware Valley II* as revolving around this central question:

> As we interpret the mandate of *Delaware Valley II,* one central theme elicits the agreement of the otherwise divided court. All of the justices seem to agree that the ultimate inquiry in establishing a reasonable fee must be the rate necessary to attract competent counsel and that contingency multipliers should be awarded only where necessary to attract such counsel.

*SPIRG,* at 1451.

Plaintiffs have submitted affidavits of nine lawyers, eight of whom have had experience in civil rights and employment litigation. The affidavits submitted on behalf of plaintiffs all support the notion that contingency multipliers are necessary to ensure sufficient legal representation in such cases. Several affiants set forth the particular difficulties that plague persons seeking legal redress for employment discrimination.

The remedies provided by the Age Discrimination in Employment Act include reinstatement, promotion, and compensatory damages, the latter of which is usually calculated in terms of back pay. *See* 29 U.S.C. Section 626(b)-(c). Plaintiffs are under a duty to mitigate, for example, by accepting another job. This statutory scheme leads to instances in which a person has suffered discrimination and yet can show little or no damages. The affidavits submitted on plaintiff's behalf warn that many attorneys will not be able to represent such persons if the only reward is the possibility of obtaining a lodestar fee. (Affidavit of Nancy Smith, paras. 6–7; Affidavit of Paul Schachter, paras. 6, 9; Affidavit of Stephen Edelstein, paras. 5–6; Affidavit of Charles Church, para. 8). The length and difficulty of employment discrimination suits also discourage attorneys from taking such cases. Defendants often engage in time-consuming discovery, while complicated issues of fact require lengthy trials. (Affidavit of Stephen Edelstein, para. 5; Affidavit of Charles Church, para. 4; Affidavit of Paul Schachter, para. 8).

The affidavit of Paul Schachter, a highly competent and experienced practitioner before this court, is particularly instructive. Mr. Schachter has been practicing in the area of civil rights and employment law since 1975. Mr. Schachter details the difficulties involved in litigating claims of employment discrimination, and the need for enhancement of attorneys' fees to ensure that counsel is available for plaintiffs who cannot prove substantial compensatory damages. He states that "without the prospect of being awarded an additional enhancement, [his firm] would refuse low recovery cases." (para. 9). He concludes that "in this geographic area, plaintiffs with meritorious cases but who do not have exorbitant damages (because, for example, they found another job after a year of looking) will not be able to secure appropriate legal representation." (para. 9).

Only one of affiants, other than plaintiff's counsel himself, attempts to quantify the necessary enhancement. Nancy Erika Smith states that attorneys should be paid "two or three times the normal hourly rate" as compensation both for risk and for delay. (Affidavit of Nancy Smith, para. 7). Plaintiffs counsel argues for a multiplier of 100%, or double the lodestar amount. (Supplemental Affidavit of John M. Esposito, para. 10).

Plaintiffs point to the opinion of the Honorable James T. Giles in *Black Grievance Committee v. Philadelphia Elec. Co.,* 690 F.Supp. 1393, 1401 (E.D.Pa.1988), in which the court found that a 200 per cent enhancer was necessary to attract competent counsel to handle employment discrimination class actions. In *Black Grievance Committee,* plaintiffs established through uncontested affidavits of Philadelphia civil rights attorneys that the market compensates for contingency cases at a rate of approximately 200 per cent. *Id.* Significantly, defendant made no attempt to contradict plaintiffs' affidavits by producing evidence that there are attorneys in the Philadelphia area who will undertake employment discrimination cases on a purely

contingent fee basis. *Id.* at 1400. In this case, defendant has submitted the affidavit of one attorney, Arnold Shep Cohen, who states that his firm, which handles employment cases, "does not turn away contingency plaintiffs with meritorious claims because a 'multiplier' is unavailable." (Affidavit, para. 5).

The affidavits submitted on plaintiff's behalf do not provide the court with a basis to make a market-based, quantitative finding. Unlike the record before Judge Giles, the record herein simply does not include any substantiated amount by which fees need be enhanced. Thus, the court has insufficient "market" evidence to quantify the amount of enhancement necessary to ensure an adequate supply of competent counsel in employment discrimination cases.

Nevertheless, the court derives from the record the following conclusions with respect to the availability of counsel in employment discrimination cases: Many persons are unable to pay attorneys on an hourly basis. Classic contingent fee arrangements are not practicable when a person has not suffered substantial monetary damage. The prospect of a lodestar amount alone is insufficient to induce competent attorneys to undertake these matters. Based on the affidavits on record, the court finds that (1) the local market regularly rewards contingency in excess of hourly rates, and (2) without an expectation of enhancement for risk, persons who have suffered discrimination in the workplace will face substantial difficulties in finding competent counsel.

The Third Circuit has stated that, under *Delaware Valley II*, the "ultimate inquiry in establishing a reasonable fee must be the rate necessary to attract competent counsel, and that contingency multipliers should be awarded only when necessary to attract such counsel." *SPIRG*, 842 F.2d at 1451. As discussed above, *supra* at 495–96, to ensure adequate legal representation for plaintiffs whose damages are limited by statute, the amount for enhancement must be based on the facts of the particular case, although the need arises from a market-wide analysis. From the beginning, this case promised to be difficult, lengthy, and risky. Plaintiffs' case rested in substantial part on statistical analysis of data obtained only through discovery. This proof could not have been established until long after plaintiffs' counsel had undertaken representation. Thus, the outcome was by no means clear at the outset of the litigation. For these reasons, the lodestar fee does not adequately compensate plaintiffs' counsel for the contingency inherent in this case.

The court has carefully reviewed the affidavits submitted in this matter as to the expectations of counsel in undertaking these matters generally, and reconsidered the specific risks confronted by counsel in this particular matter. Based upon such consideration, the court is satisfied that its original award was inadequate and that a 50 per cent enhancement is required to attract competent counsel and adequately compensate counsel here. Although the court is unable to establish a general standard, it is satisfied that greater compensation is warranted in this matter than originally determined. Furthermore, the granting of any multiplier less than 50 per cent might serve to discourage counsel from undertaking representation in other similar matters. Accordingly, a 50 per cent multiplier will be allowed.

*Enhancement for Delay.*

■ Although the issue of enhancement for delay was not before the Supreme Court in *Delaware Valley II*, none of the justices found an adjustment for delay inconsistent with the typical fee-shifting statute. The Third Circuit has likened such enhancement to an award of interest. *SPIRG*, 842 F.2d at 1453. Computing the appropriate compensation for delay depends upon "economic factors encompassing the cost to the plaintiff's law firm of waiting for its fee." *Id.* at 1453. The Third Circuit noted the "crucial importance of making an adequate showing" on this claim. *Id.* The appellate court has stated that market interest rates and the time value of money are relevant to this showing. *See Institutionalized Juveniles v.*

*Secretary of Public Welfare,* 758 F.2d 897, 923 (3rd Cir.1985); *see also SPIRG,* 842 F.2d at 1453.

The Magistrate found that plaintiffs had not made an adequate showing to justify a multiplier for delay. Plaintiffs had submitted calculations based on increases in the cost of living during the litigation. Plaintiffs have since submitted a chart containing interest rates for each year during the relevant time period, as determined by an independent investor service. The lodestar has been broken down by year, based upon affidavits of services rendered, until the date of judgment.[3] Applying the interest rates to the lodestar figures, plaintiffs arrive at the figure $14,818.63. (Exhibit A to Plaintiff's Objections).

Plaintiffs point to Judge Giles' decision in *Black Grievance Committee,* 690 F.Supp. at 1403, in which the court calculated the delay enhancer on the basis of uncontested market interest rates. Plaintiffs also offer the certification of Philip Sobel, a member of the law firm that represented plaintiffs, to document the costs of delay. (Exhibit B to Plaintiff's Objections). Mr. Sobel states that in non-contingency cases, the firm sometimes required clients who were late in payment to pay interest on any outstanding balance. Mr. Sobel states that "the cost to us of the delay of payment of our fee in this matter was significant." During the period between commencement of representation and payment, the firm borrowed money to cover the shortfall. These loans were used to pay basic operating expenses, such as secretarial salaries. (Supplemental Certification of Philip Sobel, Exhibit C to Supplemental Certification of John M. Esposito). Mr. Sobel states that "the approximate amount of interest paid on all these loans during the period from the beginning of the first loan on June 26, 1984 through December 31, 1986 was $6,200.00." (Supplemental Certification of Philip Sobel).

Defendant states that plaintiff is foreclosed by the "law of the case," namely this court's finding that movant failed to produce sufficient evidence as to their entitlement to a multiplier for delay. (*See* opinion of April 21, 1986, at 14–15). The court rejects this contention. This court's original enhancement of 20 per cent treated delay and risk together. This determination has been vacated and remanded, in order for this court to apply the instructions of the Supreme Court. *Delaware Valley II*'s holding that delay must be examined separately dictates that this court reconsider both bases for enhancement.

Defendant also attacks the statements by Mr. Sobel relating to loans taken by the law firm as incomplete and insufficiently linked to the costs associated with this case. The court finds that the evidence provided as to loans merely corroborates plaintiff's showing that the delay in payment requires compensation based on prevailing market interest rates.

Finally, defendant asserts that the lodestar already compensates plaintiffs for delay and that an additional award would constitute a windfall. This argument is without merit, since delay is not considered in determining the lodestar amount. The court concludes that plaintiffs' proofs on delay are both timely and adequate. Accordingly, plaintiffs' attorney is entitled to an additional $14,818.63 as compensation for delay in payment.

CONCLUSION

On remand, the court has differentiated between enhancement for delay and enhancement for risk, in accordance with the instructions of the Third Circuit and the Supreme Court. The court has concluded that it would not be feasible for plaintiff to retain an expert to develop and apply an econometric model to this case. The court is satisfied that the affidavits submitted on behalf of plaintiff provide adequate support for the court's findings.

The court finds that the lodestar amount should be enhanced by 50 per cent, or $56,-657.25, to ensure an adequate supply of competent attorneys in employment discrimination cases and to compensate for the particular risks encountered in this

---

**3.** Post-judgment interest was awarded separately by the Magistrate.

case. In addition, plaintiffs' counsel should be awarded an additional $14,818.63 as compensation for costs related to the delay in payment.[4]

Counsel for plaintiffs should submit an order consistent with this opinion.

4. Post-judgment interest on this amount shall be awarded from the date of judgment until the date of payment.