804 F.2d 250
 5 Fed.R.Serv.3d 1196
 LASKY, Harvey, Guardian ad litem Lasky, Jesse I. and Jamie
November, husband and wife, individually, and as
parents and natural guardians of their
minor son, Gregory Lasky
v.
CONTINENTAL PRODUCTS CORPORATION Continental Gummi-Werke,
Aktiengesellschaft Nissan Motor Corporation In
USA, Nissan Motor Corporation Limited (Japan).
Appeal of Jamie November LASKY, individually and as parent
and natural guardian of her minor son, Gregory Lasky.
 No. 85-1460.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 11, 1986.
Decided Oct. 31, 1986.
As Amended Nov. 18, 1986.
 
 William J. Gallagher (argued), Michael G. Louis, MacElree, Harvey, Gallagher, O'Donnell & Featherman, West Chester, Pa., for appellant.
 Leonard J. Bucki (argued), Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellee.
 Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and TEITELBAUM, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This unfortunate appeal is again before us for resolution due to the parties' inability to reach a prompt settlement of their dispute. We must decide whether the district court erred in finding that it lacked jurisdiction to allocate settlement proceeds among the plaintiffs in the underlying personal injury action and, if so, whether its refusal to allocate constituted an abuse of discretion. For the reasons that follow we will reverse the order denying appellant's Rule 60(b) motion for lack of jurisdiction, and remand for proceedings consistent with this opinion.
 
 I.
 
 2
 On February 11, 1986, this court heard oral argument on this appeal and was of the opinion that the parties should attempt to reach a prompt and equitable settlement of their claims. Decision in this matter was accordingly held in abeyance pending settlement negotiations mediated by Judge Rosenn.[1] Unfortunately, after months of negotiations the bitter rift between the parties could not be closed and we are again faced with the resolution of their dispute.
 
 
 3
 On August 6, 1982, Jesse Lasky instituted a products liability action against defendant Continental Products seeking to recover damages for injuries he sustained in an automobile accident on March 31, 1981. Lasky's wife, Jamie, and his minor son, Gregory, appellants in the instant appeal, joined as co-plaintiffs asserting claims for loss of consortium and companionship respectively. Due to Lasky's deteriorating condition, his brother, Harvey, was appointed guardian ad litem.
 
 
 4
 Prior to trial, plaintiffs and Nissan Motor Corporation in USA and Nissan Motor Corporation Limited (Japan) agreed to a compromise settlement. Following three days of jury trial Continental Products Corporation and Continental Gummi-Werke Aktiengesellschaft also entered into a compromise settlement with the plaintiffs. Pursuant to these settlement agreements plaintiffs were to receive a handsome lump sum settlement, the amount of which was to remain confidential.[2]
 
 
 5
 Subsequently, the plaintiffs reported to the district court that although they had agreed that payment of the lump sum amount would settle their claims against the defendants, they had been unable to agree upon an equitable allocation of the funds among themselves. On December 6, 1984, the district court dismissed the action against Continental with prejudice pursuant to Local Rule 23(b).[3] Shortly thereafter, on or about January 16, 1985, Mrs. Lasky filed a divorce action in the Chester County Common Pleas Court seeking, inter alia, distribution of all marital property. Some two months later a consent order in the products liability action was submitted to and signed by the district judge. That order of March 18, 1985 approved the payment of counsel fees and expenses out of the settlement proceeds. Since no agreement had been reached among father, wife and son on the division of the funds, however, the court directed that the balance of the settlement fund be deposited in an interest bearing account in the court registry. Three separate deposits were duly made to the account for the benefit of the plaintiffs. To date, those funds remain in the registry of the court.
 
 
 6
 On June 7, 1985, after numerous attempts to negotiate a division of the settlement among the plaintiffs proved unsuccessful, Jamie Lasky, individually and as parent and natural guardian of her minor son, Gregory, filed a Rule 60(b) motion for an order allocating the settlement proceeds among the plaintiffs. Harvey Lasky as guardian ad litem for his brother, Jesse, opposed the motion arguing, inter alia, lack of subject-matter jurisdiction and filed a cross-motion requesting that the funds be transferred to the Chester County Court for further disposition. The district court denied the motion to allocate, on July 16, 1985, holding that it was without subject-matter jurisdiction to adjudicate the conflicting claims for shares in the settlement. This appeal ensued. After oral argument this Court remitted the parties to further settlement negotiations. Those negotiations have also turned sour. We now consider the merits of appellant's appeal. We will reverse the order of the district court.
 
 II.
 
 7
 At the outset, the question arises whether we may exercise appellate jurisdiction in this case because the district court has failed to dispose of the settlement funds and may still take further action. We find that this court may exercise appellate jurisdiction in this action pursuant to 28 U.S.C. Sec. 1291. First, under the "final order" rule, orders dismissing a complaint for lack of jurisdiction are typically considered final. See Knibb, Federal Court of Appeals Manual Sec. 4.3 at 18 (1981). Moreover, and more specifically, "it is now well established that orders denying a motion for relief from a judgment under Civil Rule 60 are final." 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3916, at 610-11 (1976). On the facts of this case, it is clear that the district court intends to take no further action with regard to the settlement fund. Indeed, the court considers itself powerless to do so. Thus, there is no impediment to our exercise of appellate jurisdiction over the district court's denial of appellant's Rule 60(b) motion. Our review of the court's ruling, however, is restricted to the issue raised by the motion and does not extend to the merits of the underlying judgment.
 
 III.
 
 8
 A question concerning the jurisdiction of the district court is also raised by this appeal. Following futile attempts to negotiate an equitable division of the settlement fund, appellant, Jamie Lasky, moved for an order allocating the settlement proceeds among the plaintiffs pursuant to Rule 60(b)(6).[4] The district court, in ruling on appellant's motion, held that it lacked jurisdiction "to adjudicate the allocation of proceeds dispute among [the] plaintiffs...." App. at 194. In addition, Harvey Lasky, on behalf of his brother, Jesse, independently alleges a jurisdictional defect at the district court level, contending that the dismissal of the underlying products liability action divested the court of jurisdiction over the subsequent motion to allocate. Specifically, appellee maintains that, because the Rule 60(b) motion involves competing claims of non-diverse parties, there is no basis for federal court subject-matter jurisdiction.[5] See Brief of Appellee, Jesse I. Lasky at 10-11.
 
 
 9
 We briefly address the issue whether the district court could properly entertain the Rule 60(b) motion to allocate. Appellee suggests that the dismissal of the products liability action with prejudice on December 5, 1984 terminated the district court's jurisdiction over the allocation dispute because diversity jurisdiction no longer existed. Appellee also contends that the 90-day time limit for seeking relief from a final dismissal pursuant to Rule 23(b) had elapsed, thereby extinguishing any right of appellant to object to the consent order. Both arguments are without merit. First, appellant's motion seeks relief from the March 18, 1985 consent order of district court approving the settlement amount and directing, inter alia, that deposits in satisfaction of the settlement be made to the registry of the court. Appellee does not challenge, nor could he, the court's jurisdiction over the consent decree. The power of a court to enter a consent decree emanates from its authority to adjudicate the rights of the parties in the first instance. The authority thereafter to modify the consent decree similarly derives directly from the court's initial exercise of jurisdiction over the dispute. Put otherwise, a court has inherent power to modify a consent decree that it initially had the power to approve. See Sansom Committee By Cook v. Lynn, 735 F.2d 1535, 1538 (3d Cir.1984). Thus, jurisdiction over appellant's motion to allocate is not contingent upon the diversity of the parties seeking modification of the consent decree. Rather, the district court's power to consider the motion at all is based on the consent decree itself which was properly entered pursuant to the court's diversity jurisdiction. See Smith v. Widman Trucking & Excavating, 627 F.2d 792 (7th Cir.1980) ("It is clear that a Rule 60(b) motion is considered ancillary to or a continuation of the original suit; the motion thus requires no independent jurisdictional ground") (citing Kelly v. Greer, 334 F.2d 434 (3d Cir.1964)).[6] See also 7 J. Moore & J. Lucas, supra, at p 60.28, p. 60-308 ("No independent jurisdictional ground is needed to support the motion proceeding, which is ancillary to or in effect a continuation of the action that resulted in the [order] from which relief is sought."). Thus, that the current dispute with regard to the consent order does not involve the original adversaries in the products liability action does not defeat the district court's jurisdiction over its order.[7]
 
 
 10
 Nor does the 90-day limitation period of Local Rule 23(b) preclude district court consideration of a Rule 60(b) motion. The primacy of the Federal Rules of Civil Procedure with regard to the procedural aspects of litigation in federal courts is well-settled. See Hanna v. Plumer, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). Thus, the "reasonable time" provision of Federal Rule 60(b), as opposed to the 90-day limitation of Local Rule 23(b), controls the determination whether appellant's motion was timely filed.[8]
 
 
 11
 A district court properly exercises power over a Rule 60(b) motion where the motion is made within a reasonable time, subject to a maximum time limit of one year after the judgment if made pursuant to clauses (1) through (3), or solely "within a reasonable time," if made pursuant to clauses (4) through (6). In either instance, "what is a reasonable time must depend to a large extent upon the particular circumstances alleged." 7 J. Moore & J. Lucas, supra, at p 60.27, p. 60-301. See also Delzona Corporation v. Sacks, 265 F.2d 157, 159 (3d Cir.1959) (same). Here, appellant's motion pursuant to Rule 60(b)(6) to allocate the settlement fund was filed within six months of the Rule 23 dismissal, three months of the court approved settlement agreement and several weeks prior to the final deposit of settlement proceeds into the court registry. Moreover, there is nothing in the record to suggest that appellant did not act as soon as it became clear that a settlement was not imminent. We think these facts satisfy the reasonable time requirement. Accordingly, we find that appellant's motion is neither jurisdictionally defective nor time-barred by virtue of Local Rule 23(b).
 
 IV.
 
 12
 Ordinarily, having rejected jurisdictional challenges to a court's authority to act, we leave it to that court to assess and resolve independently the merits of the underlying dispute. In the instant action, however, because the district court implies that even were there no jurisdictional impediment to its authority, it would nonetheless deny relief,[9] we will address the discretionary aspects of Rule 60(b).
 
 
 13
 If the district court has the power to grant relief under Rule 60(b), the determination to grant or deny relief is within the sound discretion of the court. See 7 J. Moore & J. Lucas, supra, at paragraphs 60.19, 60.27, pp. 60-149, 60-272. We have long held in this circuit that "[r]ule 60(b)(6) is available only in cases evidencing extraordinary circumstances." Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir.1975). See also Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977) (relief justified "only upon a showing of 'exceptional circumstances,' " and where "absent such relief an 'extreme' and 'unexpected' hardship will result"). In exercising its discretion the district court is guided by a number of relevant factors, inter alia, " the general desirability that a final judgment should not be lightly disturbed; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; ... whether there are any intervening equities which make it inequitable to grant relief; any other factor that is relevant to the justice of the [order] under attack...." See id. at p 60.19, pp. 60-164--60-165.[10]
 
 
 14
 In this case, these considerations that ordinarily inform a court's determination whether a Rule 60(b) motion should be granted weigh heavily in favor of providing relief. First, the finality of the underlying judgment is not threatened by the instant challenge of the district court's consent order. Appellant does not maintain that the settlement amount is inadequate. Nor does she raise any other issue on the face of her motion that would have been more appropriately raised on appeal of the underlying judgment. Moreover, we have found that the appellant's Rule 60(b) motion was filed within the "reasonable time" requirement of the rule. In addition, on this record we cannot conclude that "intervening equities mak[e] it inequitable to grant relief." Indeed, the very opposite result obtains. Appellant's Rule 60(b) motion requests allocation of the funds ordered by the district court "to be deposited in an interest-bearing account for the benefit of plaintiffs and to be disbursed to plaintiffs on further Order of this Court."[11] App. at 114. In refusing appellant's motion, the district court stated:
 
 
 15
 This case settled on the third day of trial, December 5, 1984, at which time I made it abundantly clear to counsel then representing all plaintiffs 'that regardless of any problems that conceivably could lie ahead theoretically as among the parties inter se, each one of the parties is specifically agreeing that this case is, has been, shall be and is finally settled, and that they will negotiate and work out any division as among themselves.' (Tr. at 3.4).... As stated in the March 18th order, those funds will be released by court order after negotiations or other resolution between the plaintiffs result in an apportionment of the funds now with the registry.
 
 
 16
 App. at 193-94 (emphasis added). The effect of the court's order is essentially to hold the settlement funds hostage until the parties "kiss and make up." The resulting prejudice to all plaintiffs is obvious: Jesse Lasky continues to incur mounting medical expenses; Jamie Lasky must independently support her family; and Gregory Lasky, perhaps the most tragic party to this litigation, is not only deprived of the financial support of the settlement fund, but is also trapped in the midst of this acerbic and unnecessarily prolonged dispute between his parents.
 
 
 17
 Perhaps there is more to this case than meets the eye. But closing one's eyes will not make the problem go away. Apparently prompted by its view that it lacked jurisdiction, the district court failed appropriately to consider appellant's motion. There is no evidence in the record by way of findings by the district court or appellee opposition to indicate that the suggested allocation is inequitable or otherwise inappropriate. Moreover, the court, without discussion, granted appellee's cross-motion only to the extent that it argued lack of subject matter-jurisdiction. Thus, the record is also devoid of any assessment of the propriety of transferring the funds to the Common Pleas Court in Chester County. Consequently, we are left without a basis finally to dispose of this matter. It is clear, however, that the general purpose of Rule 60(b) and the more specific factors that inform a district court's discretion compel that some relief be granted in this case. Accordingly, we will reverse the order of the district court and remand for a determination of what relief is just.[12]
 
 
 
 *
 Honorable Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 In a few cases each year after having read the briefs and heard oral argument, a panel becomes persuaded that to further prolong of the litigation would be disastrous to all of the parties and that the case has a record that suggests that rational parties acting in good faith should be able to adjust their differences. Under such circumstances we inquire of counsel whether they are in unanimous agreement that the submission of the matter to an experienced judge and mediator for a limited period of time would be desirable. In this case after all the parties agreed that such mediation would be helpful, we assigned the matter to Judge Max Rosenn, a distinguished Senior Court of Appeals Judge and extremely effective mediator. The matter was assigned with the explicit agreement that none of the facts would be discussed with the panel; that the only information we would receive would be whether the matter had or had not been settled. After several months of persistent effort, Judge Rosenn advised us that despite his recommendations, the parties had not been able to reach an amicable resolution of their dispute. We note our appreciation to Judge Rosenn for his efforts in this matter and in several other matters where he has had extraordinary success in helping parties resolve fiercely contested cases
 
 
 [2]
 The plaintiffs' Motion For Court Approval of Compromise Settlement of Action and the consent order approving the settlement were both filed under seal as ordered by the district court. See App. at 113-14
 
 
 [3]
 Local Rule 23(b) for the Eastern District of Pennsylvania provides:
 Rule 23. Dismissal and Abandonment of Actions.
 (b) Whenever in any civil action counsel shall notify the Clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel. Any such order of dismissal may be vacated, modified, or stricken from the record, for cause shown, upon the application of any party filed within ninety (90) days of the entry of such order of dismissal.
 
 
 [4]
 In her Motion For Order Allocating Settlement Proceeds Among Plaintiffs, appellant maintained that "[t]his motion is authorized by F.R.C.P. 60(b) because plaintiffs need relief from the March 19, 1985 Order by having the Court allocate the [funds] deposited with the Registry of the Court ...." App. at 119. Moreover, in her Brief In Support of Motion For Order Allocating Settlement Proceeds Among Plaintiffs, appellant specifically relies on Rule 60(b)(6). See App. at 142. Thus, despite appellee's assertion that the "motion itself contained no reference to any jurisdictional or procedural bases for relief." Brief of Appellee, Jesse I. Lasky at 6, it is clear that the Motion to allocate was a Rule 60(b) motion for post-judgment relief. See 7 J. Moore & J. Lucas, Moore's Federal Practice p 60.18, p. 60-139 (2d ed. 1985) ("[S]ince nomenclature is unimportant, moving papers that are mislabeled in other ways may be treated as motions under Rule 60(b) when relief would be proper.")
 Federal Rule of Civil Procedure 60(b) provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief ..., The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.
 
 
 [5]
 Appellee frames the issue before this court as follows:
 What is presented here is the question of whether non-diverse plaintiffs may insist that the district court exercise jurisdiction over a controversy which did not exist at the time the action was dismissed with prejudice, was not intended for adjudication by the district court and not the subject of any motion until well after the time limit for seeking relief under local rule.
 Brief of Appellee at 11.
 
 
 [6]
 Similar to the case sub judice, Kelly involved a "bitter intra-family controversy" which concluded in a settlement. Following the settlement, all pending actions between the parties were dismissed with prejudice. The property which was the subject of the dispute and the basis of the district court's in rem jurisdiction was subsequently removed from the district. When the plaintiff later moved to vacate the order of dismissal, the district court denied the motion on the ground that it lacked jurisdiction. On appeal, this court observed:
 [T]he district court appears to have been of the view that the dismissal of the original actions with prejudice deprived it of jurisdiction to entertain the ancillary complaints seeking enforcement of the settlement agreement. But there can be no question of the power of a Federal district court to vacate its own orders entered in civil actions over which it had original jurisdiction "whenever such action is appropriate to accomplish justice."
 Id. at 436-37 (emphasis added).
 
 
 [7]
 To be sure, there are prudential limitations on the district court's power in granting or denying a Rule 60(b) motion. See infra Part V. Thus, a district court may not, without abusing its discretion, grant a motion where substantial prejudice to the non-moving party will result, or deny a motion where extraordinary circumstances require relief in the interests of justice. Nor may a district court exceed the scope of its power in ordering particular relief. These prudential limitations on the court's exercise of its power, however, must not be confused with the threshold determination whether such power exists
 
 
 [8]
 To be certain, a district judge may consider the expiration of the 90-day limitation of Local Rule 23 relevant to, or, under the appropriate circumstances, determinative of the issue whether the "reasonable time" requirement of Federal Rule 60(b) has been met
 
 
 [9]
 It is unclear from the district court's order denying appellant's motion to allocate whether the judge alternatively ruled that he either (1) would not (discretionary) or (2) could not (jurisdictional) adjudicate the current claims of the parties, or whether he ruled only that he could not adjudicate the claims. See App. at 193-94. The court emphasizes, however, that at the time the case was settled it was understood by all parties and the court that the plaintiffs would "work out any division as among themselves," "regardless of any problems that conceivably could lie ahead." Id. at 193. Since subject-matter jurisdiction cannot be conferred by consent or understanding, we read the court's statement as a basis for denying discretionary relief. Thus, the court seems to suggest that it will not exercise its discretion to afford relief to the parties because they agreed to "work [it] out ... among themselves." Id. The discretionary provision of Rule 60(b)(6), however, "is clearly a residual clause [precisely designed] to cover unforeseen contingencies." 7 J. Moore & J. Lucas, supra note 2, at p 60.27, p. 60-274
 
 
 [10]
 Other "relevant factors and propositions," that the district court may consider in exercising its discretion on a Rule 60(b) motion include: "if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense...." 7 J. Moore & J. Lucas, supra note 2, at p 60.19, p. 60-164. None of these factors are applicable here
 
 
 [11]
 Appellant independently argues with regard to the district court's power to entertain the motion to allocate that, by virtue of the quoted provision, the district court "specifically retained jurisdiction of this matter...." Brief of Appellant, Jamie November Lasky at 10. We reiterate here that the district court's proper exercise of power over its consent order is not dependent upon an express retention of jurisdiction within that order. Rather, jurisdiction to modify the order is inherent in its power properly to issue the order. Cf. Delaware Valley Citizens Council v. Pennsylvania, 674 F.2d 976, 980 (3d Cir.1982) ("The authority of the district court [in this case] to modify or refuse to modify the consent decree is defined in the decree itself.... [T]he decree empowers the court ... to enter 'such further orders and directions as may be necessary or appropriate for carrying out' the decree.... This provision ... is merely declaratory of a district court's inherent power to modify a consent decree, even over the objection of one of the parties.") (emphasis added)
 
 
 [12]
 We recognize that there are some cases where the wisest of trial judges or mediators cannot bring about an amicable resolution because of the deep personal hostilities of some of the parties. We are not insensitive to the district court's apparent reluctance to become embroiled in a bitter, complex dispute involving issues wholly collateral to the original products liability action. Indeed, such involvement may exceed the scope of the court's power to grant relief pursuant to Rule 60(b). That the scope of the court's power does extend to a determination whether an equitable division has been proposed by appellant or whether such division is better left to the Common Pleas Court in Chester, however, is clear. Appellant's Rule 60(b) motion does not ask the district court to undertake a task foreign to its experience. District courts make similar apportionments frequently in interpleader actions where they are asked by insurers to distribute policy limits among competing personal injury claimants. One possible approach to Appellant's motion would be to conduct proceedings similar to those which take place in these interpleader actions. Thus, in remanding this matter, we leave to the sound discretion of the district court--with due consideration to the rights of the minor child--the determination of the appropriate relief to be granted within the bounds of Rule 60(b)(6). Failure to grant some relief in the context of this case, however, would constitute an abuse of discretion, for if left to the parties and their counsel, this case could come to rival Jarndyce v. Jarndyce in Dickens' celebrated 1853 satire of the legal system, Bleak House. See C. Dickens, Bleak House (First Signet Printing, 1964)