**Mary Jane KELLY, Appellant in No. 89–1578,**

v.

**MATLACK, INC., Appellant in No. 89–1536.**

**Nos. 89–1536, 89–1578.**

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1989.

Decided May 29, 1990.

James A. Matthews, Jr., Francis M. Milone (argued), Lisa Bazemore, Morgan,

Lewis & Bockius, Philadelphia, Pa., for appellant/cross-appellee, Matlack, Inc.

Thomas Martin (argued), Philadelphia, Pa., for appellee/cross-appellant, Mary Jane Kelly.

Before SLOVITER, GREENBERG, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Once again, we are faced with the difficult task of reviewing the record in an action filed by a terminated employee who convinced the jury that her termination violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1982) (ADEA).[1] The employer, Matlack, Inc., has limited its appeal to two issues: whether there was sufficient evidence to support the jury's finding of willfulness, which resulted in the award of liquidated (double) damages, and whether there was evidence to support the jury's determination that the employee's lost fringe benefits were equal to 30% of her wages. The successful employee, Mary Jane Kelly, cross-appeals from the denial of her motion to correct the judgment with respect to the base for the fringe benefit computation. She also appeals the district court's denial of her motion for a contingency enhancement of the attorney's fee awarded.

## I.

### Facts and Procedural History

In reviewing the evidence, we must assume that the jury found the disputed facts favorably toward Kelly, the verdict winner.

Kelly, a college graduate, worked for Matlack beginning in 1975 as assistant tax manager in its Lansdowne, Pennsylvania office. Kelly's position involved accounting-type functions in connection with the company's payment of road and fuel taxes to various states in which the trucks of Matlack, a carrier, traveled. Kelly also met with state auditors who inspected the books to determine if there was any penalty due for incorrect payment. Throughout the more than ten years Kelly worked for Matlack, her performance was regularly rated as excellent and her responsibilities, which included supervision of two clerks, increased.

In January 1986, Matlack's Lansdowne facility was closed and its administrative operations were moved to Wilmington, Delaware and consolidated with those of Rollins Leasing Company, an affiliated corporation. A new corporation was established to handle these services. Frank Minner, Matlack's Vice–President and Treasurer, assured the Matlack employees that there would be positions for all interested employees at the Wilmington facility.

In the merged corporation, Matlack was to be treated as a client of Rollins for accounting purposes, and Kelly's particular position disappeared. Those duties were to be subsumed into the work already being performed by Marie Episcopo, Rollins' manager of Fleet Taxation, and the clerks whom she supervised. Episcopo's group used a more sophisticated computer system than that used by Matlack. In 1986, Kelly was 57 years old; Episcopo was 33.

Kelly was told by Frank Minner and by Tom George, Director of Fleet Services, that she would be given a new position in Wilmington. There had been discussion of creating the position of Audit Manager to deal with the state tax auditors in their inspection of the company's books and of placing Kelly in that position. Kelly was told by Minner that she would have that position. In December of 1985, she requested a meeting with Minner to talk about the position because she had not been given any specifics.

On December 16, 1985, the two met in a meeting that lasted approximately 10 minutes. Minner told her that there was no funding for the audit position and that she was terminated. Minner admits that this

---

[1]. Kelly filed the action in three counts: (1) an ADEA age discrimination claim; (2) a Title VII sex discrimination claim; and (3) a common law wrongful discharge claim. The court dismissed the wrongful discharge claim and the plaintiff withdrew the Title VII claim. The court's order has not been challenged on appeal.

was not his reason for the decision to terminate her. Minner testified that Kelly started asking about her salary, and that he made an instantaneous decision to fire her, based in part on what he had heard about her dissatisfaction with moving to Wilmington, her inexperience with the more sophisticated computer system used by Rollins, and her apparent dissatisfaction with her salary. He lied to her about his reason because he thought "it was the simplest way out" because she "was very proud of what she had done" and he "didn't want to crush her." App. at 338.

When Kelly filed a claim of discrimination with the Equal Employment Opportunity Commission, Matlack told the EEOC that Kelly was terminated because it had decided not to create an audit department, that Kelly was a proponent of manual workmanship, and that she disliked and distrusted computers. Again, these were pretextual reasons.

The case was presented to the jury on special interrogatories. Plaintiff asked for back pay, front pay, and lost fringe benefits. The parties stipulated that Kelly's back pay for the relevant period was $38,400 and that her front pay until normal retirement date was $46,128. The jury found that age was a determinative factor in Kelly's termination and that Matlack's violation of the ADEA was willful. In response to a special interrogatory, the jury also found that the value of lost fringe benefits was "thirty percent (30%) of pay." App. at 414–15. Thereupon, the court entered judgment for Kelly in the amount of $159,566.

The district court denied Matlack's motion for a judgment notwithstanding the verdict or a new trial. The court awarded Kelly attorney's fees and costs in the amount of $53,299.96 based on its calculation of the lodestar, allowing an hourly rate of $200.00/hour for 248.15 hours. It rejected plaintiff's claim that she was entitled to a fee enhancement by a contingency factor of two (which the court construed as a request to double the lodestar). It also denied Kelly's Rule 60(a) motion to correct the judgment to add 30% to the gross wage

loss rather than to the wage loss that had been stipulated. The court ruled that Kelly had not objected at trial to the stipulated amount of pay or to the calculation of the award, and that Kelly's objection to the basis of the calculation was not within the purview of a Rule 60(a) motion. As noted above, we have before us Matlack's timely appeal on the willfulness issue and the amount of fringe benefits, and Kelly's cross-appeal on the attorney's fees and the calculation of the amount of fringe benefits awarded.

■■■ The standard of review for the denial of a JNOV motion is limited. "Because a jury determined the issue, our scope of review is limited to examining whether there is sufficient evidence to support the verdict, drawing all reasonable inferences in favor of the verdict winner." *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 372 (3d Cir.1987); *see Bartek v. Urban Redevelopment Auth.*, 882 F.2d 739, 742 (3d Cir.1989). Review of a motion for a new trial is for abuse of discretion. *See Honeywell v. American Standards Testing Bureau*, 851 F.2d 652, 655 (3d Cir. 1988), *cert. denied*, — U.S. —, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989). The standard of review on plaintiff's cross-appeal of the denial of the Rule 60(a) motion to correct is under an abuse of discretion standard, *see Lasky v. Continental Products Corp.*, 804 F.2d 250, 256 (3d Cir.1986), which also applies to the calculation of counsel fee.

## II.

### Matlack's Appeal

#### A.

##### Willfulness

■■ Under the ADEA, a successful plaintiff is entitled to double damages under the liquidated damages provision only when the factfinder has determined that the violation of the Act was willful. 29 U.S.C. § 626(b) (1982). This court confronted the standard of conduct to be applied to the willfulness determination in *Dreyer v. Arco Chemical Co.*, 801 F.2d 651 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). We

found guidance in the opinion of the Supreme Court in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), where the Court stated that Congress intended "a two-tier liability scheme" and that double damages should not be awarded in every ADEA case. *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625. The standard for willfulness for liquidated damages announced in *Thurston* looked to whether the employer "knew or showed reckless disregard for" whether its conduct in promulgating a corporate policy had a disparate impact on protected employees. *Id.* In *Dreyer*, we reasoned that the *Thurston* standard "is not easily incorporated in cases alleging disparate treatment in a discrete employment situation" because in such situations, which necessarily involve intentional conduct, the employer will have known or should have known that the conduct violated the Act. *Dreyer*, 801 F.2d at 656–58. We concluded that in order to effectuate the two-tiered standard to sustain liquidated damages "there must be some additional evidence of outrageous conduct." *Id.* at 658 (adopting the standard of the Restatement (Second) of Torts § 908(2) for punitive damages).

Defendant incorrectly construes this statement as imposing a quantitative requirement for a finding of willfulness. In fact, we were also applying a qualitative analysis. Although willfulness will probably be proved in most cases by evidence additional to that required to show an ADEA violation, in an appropriate case, one act, if it meets the qualitative standard, could show both intentional age discrimination and willfulness. *See Dreyer*, 801 F.2d at 658 ("The circumstances of the violation itself may be so egregious ... that double damages may be warranted."). We suggested looking at " 'the character of the defendant's act, [and] the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause.' "

*Id.* (quoting Restatement (Second) of Torts § 908(2) (test for punitive damages)).

In *Dreyer*, we eschewed providing a litany of situations which would warrant a factfinder in finding willfulness, noting that in most cases liquidated damages would be dependent upon an *ad hoc* inquiry into the particular circumstances.[2] Nonetheless, review of the fact patterns in the series of cases on the willfulness issue decided by this court since *Dreyer* is informative of our application of the general principle. See *Anastasio v. Schering Corp.*, 838 F.2d 701 (3d Cir.1988); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3d Cir.1989); *Bartek v. Urban Redevelopment Auth.*, 882 F.2d 739 (3d Cir.1989); *Bruno v. W.B. Saunders Co.*, 882 F.2d 760 (3d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990); *Turner v. Schering–Plough Corp.*, 901 F.2d 335 (3d Cir.1990). Only in *Bruno* did we sustain the finding of willfulness.

■ Kelly argues that the jury could have found willfulness in the fact that Matlack gave admittedly pretextual reasons both to her and to the EEOC as a justification for her termination. She also contends that the fact that she was required to file suit to meet these false defenses goes to the extent of the harm she suffered and therefore "provide[s] ample justification for the award of liquidated damages." Appellee's Brief at 19.

These facts cannot alone be enough to establish willfulness. In each of our ADEA cases cited above, defendant proffered a reason other than age for the termination and the factfinder found that reason to be pretextual. None of our cases found that fact to be sufficient evidence of willfulness.

In *Anastasio*, a 62-year old manager of engineering was terminated when his position was eliminated, ostensibly to meet budgetary guidelines, and he declined to accept the lower grade non-managerial positions

---

**2.** We did posit several scenarios which might show willfulness: (1) where evidence exists that shows that the employer had previously violated the ADEA; (2) where the termination of the employee came at a time when it would deprive him or her of a pension; or (3) when the circumstances of the violation itself were egregious, as in the systematic purging of older people from the employee staff. *Dreyer*, 801 F.2d at 658.

offered. Although a 38–year old manager was added before his termination, and three additional managerial positions were created three days after Anastasio's termination and filled by people in their thirties, *see* 838 F.2d at 705–07, we found insufficient evidence of willfulness. *Id.* at 706–07. In *Dreyer*, the two plaintiffs were given pretextual reasons for their discharge, but we overturned the jury's willfulness finding. *See* 801 F.2d at 656–59. In *Bartek*, the employer's failure to promote plaintiff because he was allegedly not as qualified as the younger persons promoted was determined to be pretextual but we vacated the award of liquidated damages. *See* 882 F.2d at 744–46. In our most recent case on this issue, *Turner*, we held that a jury could find that the reason given to terminate plaintiff rather than offer him a new position was pretextual, but we found no basis to allow the jury to award punitive damages. *See Turner*, 901 F.2d at 346–47. Those precedents establish that pretext alone is no basis to award liquidated damages.

Nor do we see any reason to hold that the fact that defendant chose to litigate its defense shows the type of willfulness that warrants liquidated damages. If it were, then any jury could automatically award the double damage remedy. Although Kelly argues that the litigation posture of Matlack enhanced her damages and therefore supports the finding of willfulness, in *Turner* we held that termination which diminished the size of Turner's vested pension and thereby enhanced his damages was not enough to require a trial on the liquidated damages claim. If it were, "the admittedly wavering line between ordinary cases of age discrimination and outrageous cases warranting liquidated damage awards would be wholly obliterated." *Id.* at 347.

■ Kelly points to the evidence that the younger employee who had taken over her work met with her to learn her procedures. She states that in *Lockhart* we cited this type of conduct as warranting the imposition of liquidated damages. The reference in *Lockhart*, however, merely stated that a jury might find "evidence of outrageous behavior if an employer requested that an older employee train a young, inexperienced person for his job prior to involuntary termination." *Lockhart*, 879 F.2d at 58 n. 18. That is not the situation here. The employee who absorbed Kelly's duties had been employed by the company for approximately the same number of years as Kelly and had been in charge of the department to which Kelly's administrative duties were transferred in the reorganization. The need to ascertain the nature of Kelly's duties had none of the aspects of humiliating conduct implied in the *Lockhart* footnote.

■ The strongest evidence tending to show that Matlack's conduct was willful is that Matlack misled Kelly into believing that she would have a job after the Lansdowne facility was closed and that she was induced to stay with the company for several months because of that misrepresentation. Once again, we look to our precedent for guidance. Durham, one of the plaintiffs in *Lockhart*, had also been informed that he was to have the position newly created as a result of the corporate reorganization, that of Atlanta Area Business Center Manager, *see* 879 F.2d at 50, and as evidence of outrageous conduct he pointed to the facts that he worked an overwhelming amount of extra hours in planning the Atlanta Area Business Center, that he was asked to work a month after notification of his discharge to train his reputed replacement, and that his termination occurred when he was under a contract to buy a new home that he was forced to buy while jobless. *Id.* at 58. We ruled, nonetheless, "that this proffered evidence falls short of that 'minimum quantum' needed to support the jury's finding of willful discrimination." *Id.* Kelly's evidence in this case is certainly no more suggestive of outrageousness than was that in *Lockhart*.[3]

---

**3.** We recognize that Judge Seitz, in his concurring and dissenting opinion, finds *Lockhart* inapplicable because there is no reference in that opinion to any evidence that the employer promised Durham a new position "with the intention of retaining him only temporarily." The

Finally, we must compare the evidence in this case with that in *Bruno v. W.B. Saunders Co.*, 882 F.2d 760 (3d Cir.1989), where we held that there was sufficient evidence to support the jury's finding of willfulness. In *Bruno*, as in this case, a department was closed and the job held by the plaintiff was eliminated. *See id.* at 762–63. In *Bruno*, unlike this case, an existing job became open into which a far less senior employee was placed, and we held that there was evidence from which a jury could have inferred that the job description created by defendant was intended to provide justification for the selection of the younger employee over Bruno. *See id.* at 771.

In reviewing *Bruno* in the context of our other precedent, we deem it significant that Bruno testified that her employer conditioned its offer of a position at another facility on Bruno's dropping the age discrimination charge which she had filed with the EEOC. *See id.* at 770. Although any violation of the ADEA subverts Congress' policy to eliminate age discrimination from our economy, an attempt by the employer to pressure an employee to withdraw a charge circumvents the central role Congress gave to the EEOC in the investigation, conciliation and mediation of instances of alleged age discrimination. A jury crediting testimony of an employer's effort to bypass the EEOC may reasonably view the insidious effect of such conduct as warranting liquidated damages.

In this case, there is an absence of any comparable conduct. There was a corporate reorganization; Kelly's job was eliminated; her duties folded into that of a younger employee but one with equivalent seniority and with more experience on the sophisticated computer system; Kelly pointed to no available position which would have been suitable for her, and complains primarily because the employer failed to create a new position for her. While the employer's pretextual reasons for Kelly's termination and its action in misleading her into believing she would be retained could have been evidence to support the jury's verdict of age discrimination, an issue that is not before us, we see insufficient evidence from which the jury could have found willful conduct to support liquidated damages. We will therefore reverse the district court's order denying defendant's motion for a JNOV on liquidated damages.[4]

## B.

### The Fringe Benefit Claim

Matlack's other claim on its appeal is that the jury's award of thirty percent of Kelly's back pay and front pay as fringe benefits is not supported by the evidence. To show the lost fringe benefits, Kelly introduced into evidence an earlier employee handbook that referred to the benefits as "your invisible paycheck" and listed the employees' fringe benefits as consisting of vacations, holidays, sick leave/funeral leave, short and long term disability benefits, tuition aid program, comprehensive hospital, surgical and medical benefits, including dental and vision care, life and accidental death insurance, pension plan, social security contributions, workmen's compensation contributions, and state and federal

evidence of a promise to Durham in *Lockhart* was clear. Durham testified that in June 1983 "he was informed by [Regional Manager] that he was to have the newly created position of Atlanta Area Business Center Manager," "that in August 1983, he assumed the responsibilities of this new position," and "that when the reorganization formally went into effect [early 1984], his promised position—retitled Division Manager— was given to [another] who was 34 years old." 879 F.2d at 50. There was no more evidence in this case that defendant intended to retain Kelly only temporarily than there was in *Lockhart.* Although the jury in each case may have so inferred in finding a willful violation, we see no basis to distinguish this case from our holding in *Lockhart* that the evidence did not show willfulness. Similarly, we cannot distinguish *Lockhart* because Durham was paid for the additional work he did. Here, there is no evidence that Kelly did any extra work. However, she was paid for the entire period she was employed. Respectfully, therefore, we disagree with the distinction Judge Seitz draws between the two cases.

4. In light of our decision, we do not reach Matlack's challenge to the legal correctness of the willfulness charge. We reiterate, however, that willfulness must consist of more than intentional conduct in ADEA *disparate treatment* cases.

unemployment contributions. The handbook then stated, "[t]he current value of your Invisible Paycheck is approximately 30 [cents] for each dollar of your pay." App. at 72. Defendant did not object at the time of the introduction of this evidence.

To rebut Kelly's evidence on fringe benefits, Matlack introduced its 1984 handbook in effect when Kelly was terminated, which did not contain the "invisible paycheck" language. It introduced an expert witness to support its contention that nine of the eleven benefits listed in the handbook were already reflected in the employees' paychecks. That witness also testified that the cost to Matlack of hospitalization for each employee was $757 per year, and Matlack concedes that even under its position, Kelly lost not only her medical benefits but also her pension benefits.

 When the special interrogatory on fringe benefits was presented to the jury, the jury was given only two choices as to the value of the benefits lost: 30% of pay or $757. Matlack did not object to the interrogatory. A jury is free to select the highest figure for which there was evidentiary support.[5] The jury in this case chose the plaintiff's version based, as it was, on Matlack's own words in its handbook. The jury could have reasonably believed that even though the handbook at the time of Kelly's termination did not contain the 30% language, that value continued to apply because there was testimony that the same fringe benefits were included. We cannot say that the jury's decision had no basis in the evidence. Thus, there was no error of law nor did the district court abuse its discretion in denying defendant's motion for JNOV or a new trial on this ground.

### III.

#### Plaintiff's Cross–Appeal

#### A.

#### Denial of Motion to Correct the Judgment

 Following the jury's verdict, the court calculated the fringe benefits as 30% of the total amount which had been stipulated as plaintiff's past and future losses in pay. It added this figure representing fringe benefits to the stipulated amount of pay loss and entered judgment for plaintiff in the amount of $159,566. Kelly filed a motion under Fed.R.Civ.P. 60(a) to correct the judgment, arguing that the 30% added for fringe benefits should have been applied to her gross wages, rather than to the stipulated amount which she argues represented her net wages. She contends that the stipulated wage loss had been calculated by reducing the gross pay by the amount of the substitute earnings Kelly earned during the relevant period.

It is doubtful whether this type of calculation, which was intentionally and knowingly made by the district court, is the type of clerical error contemplated by Rule 60(a). *See Security Mutual Casualty Co. v. Century Casualty Co.*, 621 F.2d 1062, 1065 (10th Cir.1980) (Rule 60(a) does not cover acts deliberately done). *See also Glick v. White Motor Co.*, 458 F.2d 1287, 1294 (3d Cir.1972) (motion falls within Rule 60(a) when there is no discretion in granting prejudgment interest under state rule); *Hayden v. Scott Aviation, Inc.*, 684 F.2d 270, 272 (3d Cir.1982) (same).

Kelly argues that because the motion was filed within ten days of the original judgment, we should consider that it was filed as a motion to alter or amend a judgment under Rule 59(e). She argues that the court should have granted her request for relief because the molded verdict does not reflect the jury's intention. She contends that the jury must have meant to add the fringe benefits to the gross lost wages, not the net lost wages, although the latter amount was contained in the stipulation.

Kelly did not protest the calculation at trial. When the district judge denied the plaintiff's motion, he stated that he was fulfilling the intent of the jury and the stipulation. He was in a much better posi-

---

5. Although Matlack argues Kelly is not entitled to fringe benefits absent evidence that she paid for their replacement, we see no reason why her loss is any the less merely because she may not have replaced the coverage or because she may not have been ill during the relevant period.

tion to make that determination than is this court. Indeed, Kelly's counsel referred to the stipulated amount several times, most notably when he asked the district court to mold the verdict "based on the stipulated damages that were found plus the thirty percent as to each," App. at 416, and when he told the court:

> [i]f the jury ... accepts Mrs. Kelly's statement that these were the benefits she received, then the jury is entitled to award both back benefits *in the amount of thirty percent of the back pay that we agreed,* and front benefits in the amount of thirty percent of the front pay that we foresee because the witness this morning agreed that it would be appropriate to simply take a percentage of the front pay award, if that was the accurate percentage.... [I]f [the jury] determine[s] that thirty percent is the accurate figure, then they have to apply *it to the amount of wages which we've agreed are involved.*

App. at 364 (emphasis added). Under the circumstances, we cannot conclude that the failure to grant the Rule 60(a) motion, even if deemed a Rule 59(e) motion, was an abuse of discretion.

## B.

### Contingency Enhancement of Fee

After the trial, Kelly petitioned the district court under the provisions of the ADEA, 29 U.S.C. § 626(b) (1982), for an award of reasonable attorney's fees. She requested a lodestar figure based on the 248.15 hours at a rate of $200 per hour, and an enhancement of double that figure based on the contingent nature of the litigation.

To support her request for an enhancement, Kelly filed eight affidavits from local attorneys, some of which stated that their firms no longer took employment discrimination cases for economic reasons. Other affiants stated that their firms would only take contingency fee cases when the fee was high enough or when a good probability of success existed.

The district court found that the lodestar figure, the hours expended multiplied by the rate per hour, was reasonable; it did not reduce this figure to take into account the unsuccessful claim, finding that the claims were interrelated. It refused, however, to enhance the lodestar amount to reflect the contingent nature of the plaintiff's success, concluding that enhancement was not necessary to attract competent counsel in the relevant community. Kelly cross-appeals from the district court's denial of her motion for a multiplier.

Kelly argues that the affidavits clearly establish that it will be necessary to compensate attorneys at twice the normal hourly rate in order to attract competent counsel because some contingency fee cases will result in no fees. Our scope of review of this issue is narrow. "[T]his court may alter the award only if the district court abused its discretion." *Blum v. Witco Chemical Corp. (Blum I),* 829 F.2d 367, 378 (3d Cir.1987).

We recently faced the elusive task of deciding when to augment a lodestar with a multiplier in *Blum v. Witco Chemical Corp. (Blum II),* 888 F.2d 975 (3d Cir.1989). Plaintiffs in *Blum* filed eight affidavits in support of their request for a fee enhancement. On appeal, we reversed the allowance of a 50% multiplier by the district court. We noted that several factors must be met before a court could award a multiplier: "'compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class,* rather than on an assessment of the "riskiness" of any particular case,'" 888 F.2d at 981, "the risk enhancement must be necessary to attract competent counsel," *id.,* "'the fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency,'" *id.,* and the determination is controlling for future cases involving the same market, *id.* (citations omitted) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 731, 733, 107 S.Ct. 3078, 3089, 3090, 97 L.Ed.2d 585 (1987)).

The district court in this case determined that the affidavits and evidence presented did not prove that an enhance-

ment was necessary to attract competent counsel. In order to qualify for an enhancement, a plaintiff must establish that without adjustment, it " 'would have faced substantial difficulties in finding counsel in the ... relevant market,' " *Blum I,* 829 F.2d at 379 (quoting *Delaware Valley Citizens' Council for Clean Air,* 483 U.S. at 733, 107 S.Ct. at 3090 (O'Connor, J., concurring)), which includes "all contingency cases in a given geographic market," *Blum I,* 829 F.2d at 381. After studying the affidavits, we conclude that the district court did not abuse its discretion in refusing to enhance the lodestar amount. Although the plaintiff initially had difficulty in finding counsel to represent her, this fact, coupled with the affidavits, does not satisfy the need to show the "significant burden" that could justify a contingency multiplier, *Blum II,* 888 F.2d at 981, which we have stated is a mandatory prerequisite to an enhancement.

### IV.

### *Conclusion*

For the reasons set forth above, on Matlack's appeal we will reverse the district court's order denying the motion for a JNOV and vacate that part of the judgment awarding plaintiff liquidated damages; we will affirm that portion of the judgment awarding plaintiff damages for lost fringe benefits and affirm the order denying plaintiff's motion for a new trial. On Kelly's cross-appeal, we will affirm the district court's order awarding attorney's fees and denying plaintiff's motion under Rule 60(b). The case will be remanded to the district court so that it can modify the judgment in accordance with this opinion. Each party to bear its own costs.

SEITZ, Circuit Judge, concurring and dissenting.

I concur in the majority opinion except as to its determination that the district court committed error in denying Matlack's motion for JNOV on Kelly's claim for liquidated damages based on the willfulness of Matlack's conduct. As the majority noted, our scope of review is quite narrow here. We look to see whether there is sufficient evidence to support the verdict, drawing all reasonable inferences in favor of the verdict winner. *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 372 (3d Cir.1987). The standards governing the willfulness requirement have been set forth in several opinions in this circuit. However, they are much easier to state than to apply to the variety of factual settings coming before the court. Given that difficulty, it seems to me that appellate restraint is particularly important where review may well encroach on the protection afforded by the seventh amendment.

Turning to Kelly's evidence, which must be accepted as true in view of the jury verdict, I find it necessary to address only one factor, viz., that Matlack mislead Kelly into believing that she would have a job after the Lansdowne facility was closed. Kelly was assured of continued employment by Matlack's general statements to employees regarding employment after the consolidation and by a more explicit promise that she would have a newly created position of Audit Manager. She was induced to stay for several months because of these misrepresentations and thereby was discouraged from seeking other employment immediately. As I read the majority opinion it concludes, without explicit factual analysis, that such evidence was insufficient to support liquidated damages. Rather than conduct such analysis, the majority obtained "guidance" from *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43 (3d Cir.1989). I find the case inapplicable to the present facts.

The *Lockhart* opinion makes no reference to any evidence that defendant promised Durham a new position with the intention of retaining him only temporarily. Nor did the opinion state as a fact for review purposes that defendant had this intention from the date of the promise. Consequently, discussion of permissible inferences in *Lockhart* is irrelevant. Indeed, it would encroach on our scope of review to go behind the facts as stated by the *Lockhart* opinion by speculating as to what the jury could infer. Thus, the case is not binding precedent here.

In addition, the claim of harm resulting from the promise in *Lockhart* was the addi-

tional work Durham did in planning the Atlanta Area Business Center. The court did not find this cognizable harm justified liquidated damages because Durham was compensated for his efforts and voluntarily assumed these additional responsibilities. Unlike the harm to Durham identified by the court in *Lockhart*, Kelly remained a Matlack employee, failing to seek other employment, because of Matlack's conduct.

With all deference, I do not believe the majority's conclusory evaluation of the evidence is compatible with the governing standard of review. But, of greater importance, the fact that Kelly was "strung along" goes well beyond age discrimination merely accompanied by simple pretext. It deterred her from looking for another position. It also made her aware, after her termination, that she had been exploited, assuredly creating a deeply humiliating feeling. In my view the jury was entitled to conclude that such conduct went beyond the merely pretextual to the outrageous.[1]

I therefore would affirm the district court's denial of the JNOV motion.

---

1. Thus, I need not consider whether it is legally permissible for the fact-finder to evaluate evidence cumulatively in determining a willfulness issue.